FILED

**NOT FOR PUBLICATION**

JUL 24 2018

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 17-50081 & 17-50106 |
| Plaintiff - Appellee, | D.C. Nos. 3:16-cr-02217-LAB-1 & 3:17-cr-07002-LAB-1 |
| v. | |
| HERMINIO GARCIA-CARILLO | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Larry Alan Burns, District Judge, Presiding

Argued and Submitted July 10, 2018
Pasadena, California

Before: FISHER,[**] WATFORD, and FRIEDLAND, Circuit Judges.

Herminio Garcia-Carillo appeals from the district court's judgments

convicting him of attempted illegal reentry and revoking his term of supervised

release imposed in an earlier case. We affirm.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable D. Michael Fisher, Senior United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

The district court did not abuse its discretion in rejecting Garcia's proposed *voir dire* questions. The Constitution requires a court to pose questions concerning potential racial bias only when issues of race are "inextricably bound up with the conduct of the trial." *Rosales-Lopez v. United States*, 451 U.S. 182, 189 (1981) (plurality opinion) (quoting *Ristaino v. Ross*, 424 U.S. 589, 597 (1976)); *United States v. Sarkisian*, 197 F.3d 966, 978–79 (9th Cir. 1999). That standard was met in *Ham v. South Carolina*, 409 U.S. 524 (1973), where the defendant was a locally prominent African-American civil rights activist who alleged that the police had targeted him because of his civil rights work. *Id.* at 525. In those circumstances, the Court concluded, issues of race would inevitably be front and center at trial. In *Rosales-Lopez*, by contrast, the Court held that "no 'special circumstances' of constitutional dimension" justified an inquiry into racial or ethnic prejudice, even though the defendant there was of Mexican descent and had been charged with participation in the illegal transportation of Mexican nationals into the United States. 451 U.S. at 192. This case is governed by *Rosales-Lopez* rather than *Ham*, because here, too, there are no special circumstances suggesting that racial issues would be "inextricably bound up with the conduct of the trial." *Id.* at 189 (quoting *Ristaino*, 424 U.S. at 597).

Even under the more forgiving standard that applies under our supervisory power, the district court permissibly denied Garcia's *voir dire* requests. *See id.* (recognizing the "broad role of the trial court" in conducting *voir dire*). To succeed under this standard, Garcia must establish that there was a "reasonable possibility" that racial or ethnic prejudice influenced the jury. *Id.* at 192; *Sarkisian*, 197 F.3d at 979. Garcia contends that this standard was met because his trial occurred shortly after the 2016 presidential election, and during the campaign leading up to the election the winning candidate was openly critical of Mexican immigrants.

The circumstances Garcia relies on are not dramatically different from those present in *United States v. Anekwu*, 695 F.3d 967 (9th Cir. 2012), where we held that the district court did not abuse its discretion in refusing to ask questions about potential racial bias during *voir dire*. *Id.* at 979–81. There, the defendant was a Nigerian national accused of defrauding Americans. *Id.* at 971, 977–78. He pointed to media reports and recent cases suggesting that Nigerians often perpetrated the type of fraud he had been charged with committing. *Id.* We nonetheless held that "this evidence does not prove that the population at large has prejudice against Nigerians." *Id.* at 980.

The same is true here. The fact that a successful presidential candidate made derogatory remarks about Mexican immigrants during the campaign does not, on its own, demonstrate that the population at large is prejudiced against such individuals. And, as in *Anekwu*, *see id.* at 977, the jurors individually informed the district court that they could be fair and impartial—here, these assurances were given after the district court stressed that anyone who could not "fairly listen to the facts" in "a criminal immigration case," or whose "strong feelings" about immigration prevented them from following the law, should not sit on the jury. Without some affirmative indication that members of the jury pool might have harbored prejudice against Mexican immigrants, this case cannot be distinguished from our decision in *Anekwu*.

Moreover, injecting the subject of race into *voir dire* is far from costless. Requiring the inquiry Garcia proposed would have risked "creat[ing] the impression 'that justice in a court of law may turn upon the pigmentation of skin [or] the accident of birth,'" and the district court may have been "understandably hesitant to introduce such a suggestion into [his] courtroom." *Rosales-Lopez*, 451 U.S. at 190 (quoting *Ristaino*, 424 U.S. at 596 n.8). While it of course would have been more pernicious to allow "persons entertaining a disqualifying prejudice" to serve on the jury, *Aldridge v. United States*, 283 U.S. 308, 315 (1931), the district

court was in the better position to decide which was a greater risk here. *See Rosales-Lopez*, 451 U.S. at 189 ("Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the *voir dire*.").

Because the district court did not abuse its discretion in declining Garcia's *voir dire* requests, we affirm his conviction for illegal reentry. Other than the supposed invalidity of his attempted illegal reentry conviction, Garcia did not raise any grounds for challenging the revocation of his supervised release. We therefore affirm the district court's judgment revoking his supervised release as well.

**AFFIRMED.**

*United States v. Garcia-Carillo*, Nos. 17-50081, 17-50106

WATFORD, Circuit Judge, dissenting:

A defendant in a federal criminal trial is entitled to ask prospective jurors about potential racial or ethnic prejudice whenever there is a "reasonable possibility" that such prejudice might influence a juror's evaluation of the evidence. *Rosales-Lopez v. United States*, 451 U.S. 182, 192 (1981) (plurality opinion). The defendant in this case, Herminio Garcia-Carillo, is a Mexican national who was charged with illegally re-entering the United States. He argues that a reasonable possibility of racial or ethnic prejudice existed in his case because his trial took place shortly after Donald Trump was elected president. Throughout his campaign, then-candidate Trump made statements about immigrants from Mexico that cast them in a negative light. To take one example, he stated the following when launching his presidential bid: "When Mexico sends its people, they're not sending their best. They're not sending you. They're not sending you. They're sending people that have lots of problems, and they're bringing those problems with us. They're bringing drugs. They're bringing crime. They're rapists. And some, I assume, are good people." *Donald Trump Presidential Campaign Announcement* (C-SPAN broadcast June 16, 2015), https://www.c-span.org/video/?326473-1/donald-trump-presidential-campaign-announcement&start=670.

Could someone who shared similar views about immigrants from Mexico sit as a fair and impartial juror in a case involving a Mexican national charged with illegally re-entering the United States? Probably not. So Garcia-Carillo asked the district court to inquire during *voir dire* whether any of the prospective jurors would be biased against him because of his race or ethnicity. The district court refused to do so. In my view, that refusal was an abuse of discretion.

The "reasonable possibility" standard is not difficult to meet. A defendant just needs to show a rational basis for thinking that race or ethnicity might factor into a prospective juror's assessment of his guilt or innocence. Here, Garcia-Carillo made that showing. He noted that the crime with which he was charged required the government to prove that he is a Mexican national who re-entered the United States illegally. His trial was set to take place on the heels of a divisive national election in which the issue of illegal immigration—particularly from Mexico—received significant attention. And, as noted, the winning candidate espoused views of Mexican immigrants that, if shared by a prospective juror, would likely be disqualifying, or at the very least relevant in deciding whether to exercise a peremptory challenge. When a successful presidential candidate embraces the view that immigrants from Mexico are rapists who bring crime and drugs into the United States, is it irrational to think that one or more members of a

jury venire drawn shortly after the election might share similar views?  Was it irrational for Garcia-Carillo to be concerned that some prospective jurors might view him through the lens of the stereotype embraced by then-candidate Trump?

Just last year, the Supreme Court reminded us that racial bias is "a familiar and recurring evil" in our criminal justice system.  *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 868 (2017).  One of the few ways to root out that evil is through *voir dire*, when prospective jurors can be questioned about their ability to set aside considerations of race or ethnicity.  *See id.*  Yes, posing such questions has the unfortunate consequence of focusing prospective jurors' attention on the defendant's status as a member of a racial or ethnic minority.  But as the Court noted in *Aldridge v. United States*, 283 U.S. 308 (1931), *not* permitting such inquiry when the defendant reasonably requests it inflicts even greater harm on the administration of justice, by allowing doubts to linger about whether "persons entertaining a disqualifying prejudice were allowed to serve as jurors."  *Id.* at 315.

The district court failed in its duty to ensure that Garcia-Carillo was tried by a fair and impartial jury, by refusing his request to ask a simple but vital question during *voir dire*.  I would reverse his conviction and remand for a new trial.